# Supreme Court of Texas

No. 24-0236

In re William W. Gothard, Jr., and Institute in Basic Life Principles, Inc.,

*Relators*

On Petition for Writ of Mandamus

CHIEF JUSTICE BLACKLOCK, joined by Justice Devine and Justice Sullivan, dissenting from the denial of the petition for writ of mandamus.

"[C]ourts are prohibited from *risking* judicial entanglement with ecclesiastical matters . . . if the substance and nature of the plaintiff's claims are inextricably intertwined with matters of doctrine or church governance . . . ." *In re Lubbock*, 624 S.W.3d 506, 514 (Tex. 2021) (emphasis added). We should grant this petition to ensure that this litigation, if it proceeds, is not "inextricably intertwined with matters of doctrine." *Id.* As currently pleaded, I have little doubt that it will be.

In addition to validly seeking justice for victims of sexual assault, the plaintiffs' petition invalidly seeks to put on trial certain religious teachings about sex and family life, which the plaintiffs allege facilitated and encouraged their abuse. That must never happen in a Texas court. "Both the Texas Constitution and the United States Constitution compel

judges to acknowledge that there are places where our imperfect judicial system does not belong, places where earthly judges have no power." *Id.* at 520 (Blacklock, J., concurring). Because this petition asks the courts to tread on just such sacred ground, it should be dismissed, and the plaintiffs should be required to replead their case, if possible, in a way that does not ask a judge or a jury to pass judgment on the propriety or advisability of any defendant's interpretation of the Bible.

* * *

The plaintiffs are young women who were sexually abused by their immediate family members. Texas courts can and should impose liability on the perpetrators of such terrible crimes. In addition to suing their abusers, however, the plaintiffs sued a once-prominent Christian religious ministry, the Institute in Basic Life Principles, in which their family participated. They also sued the ministry's leader, Bill Gothard. The petition alleges that Gothard and IBLP were involved in a conspiracy to abuse the plaintiffs. Yet the live petition contains no allegation that Gothard or any high-ranking member of IBLP had any knowledge of or interaction with the plaintiffs' family—much less any knowledge of or interaction with the abuse that took place within the family. Instead, the petition's primary allegation connecting Gothard and his ministry to the awful crimes the plaintiffs suffered is that Gothard's "teachings on patriarchal authority and the corresponding duty of loyalty owed by children is intended to create and has created ideal victims for sexual assault." Plaintiffs' First Am. Pet. at 9, ¶ 37.

As characterized in the petition, Gothard's teachings are what some might call "fundamentalist." They surely strike many modern ears

as extreme, but for most of our history, they were far closer to the mainstream of American religious life than they are today. They are arguably grounded in various Biblical passages, although whether they correctly interpret those passages is obviously not a matter for judicial inquiry. "[T]he First Amendment prohibits courts from determining the veracity of religious tenets." *Tilton v. Marshall*, 925 S.W.2d 672, 678 (Tex. 1996).

The First Amendment—and, separately, the Texas Constitution—also prohibit putting religious adherents on trial for the content of their beliefs. We do not "conduct[] 'heresy trials.'" *Id.* "Courts are not arbiters of scriptural interpretation," and "the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 715–16 (1981); *see also United States v. Lee*, 455 U.S. 252, 257 (1982) ("[C]ourts are not arbiters of scriptural interpretation."); *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 13 (Tex. 2008) ("The Free Exercise Clause prohibits courts from deciding issues of religious doctrine.").

Despite the well-settled guardrails against judicial inquiry into questions of scriptural interpretation, a major theme throughout the plaintiffs' petition is that the *content* of Gothard's interpretation of the Bible with regard to sexuality and family life created an environment conducive to sexual assault—and that Gothard and his ministry therefore share legal responsibility for sexual assaults of which they had no knowledge. The petition contends that "[a]uthority, especially patriarchal authority, is at the pinnacle of all IBLP doctrine and is one

3

of the primary bases for IBLP culture," which the petition claims is a cult. Pet. at 6, 7, ¶¶ 24, 29. This conception of fatherly authority identifies husbands and fathers as the "sole, absolute authority with complete control over wives and children," whereas women and children have the corollary duty to unquestioningly obey their husbands and fathers. *Id.* at 6, ¶¶ 24–25. The petition argues that these teachings were a key component of the indoctrination that was designed to create "readily available, compliant victims of sexual assault." *Id.* at 7, ¶ 28.

This basic allegation is repeated in multiple ways throughout the petition:

- "IBLP's doctrines, particularly those on authority, sexuality, and suffering, became a blueprint for fathers and older brothers to sexually abuse their daughters and younger sisters." *Id.* at 12, ¶ 48.

- "IBLP's teachings on human sexuality are neither biblical nor consistent with orthodox Christian doctrine, yet they are taught as the Word of God mediated through Gothard." *Id.* at 9, ¶ 38.

- "Through pre-courtship and courtship, IBLP intentionally and effectively sexualizes the father-daughter relationship." *Id.* at 11, ¶ 46.

- "Through [IBLP's homeschooling curriculum], Gothard and IBLP indoctrinated children and [the curriculum] was a central means by which Gothard and IBLP: (a) groomed girls and young women to be readily available, compliant victims of sexual assault by male IBLP authorities, including the fathers and brothers of the victims, and (b) planned and facilitated the cover-up of these crimes and torts." *Id.* at 7, ¶ 28.

- "IBLP's doctrine on how women dress is a part of its larger doctrine that most women who are sexually assaulted are at least as guilty as their assailant." *Id.* at 10, ¶ 41.

4

- "IBLP followers are indoctrinated to believe *both* that: (a) a girl or young woman must *never* question anything that her father does to her, including invasions of her body; and (b) if a girl or young woman fails adequately to cry out when sexually assaulted, she is equally responsible with the attacker for the assault." *Id.* at 10, ¶ 42.

- "IBLP taught that law enforcement, especially agencies such as Texas Child Protective Services, were agents of Satan and that it was therefore a moral imperative to lie to law enforcement about allegations of abuse." *Id.* at 12–13, ¶ 50.

- "A.L.E.R.T. was one of the primary means by which Gothard and IBLP reinforced . . . principles of hierarchy, control, domination, and submission." *Id.* at 13, ¶ 52.

- "The A.L.E.R.T. program taught that Christian masculinity was physical, overpowering, and aggressive. Thus, in the name of promoting 'manliness,' through A.L.E.R.T., IBLP taught and promoted the physical, mental, and emotional subjugation of women and girls. While IBLP was training girls to be victims, it was also training boys to be attackers." *Id.* at 14, ¶ 55.

These and other allegations in the petition boil down to the claim that the *content* of Gothard's teachings about sex and family are evidence that Gothard and his ministry *wanted* young women like the plaintiffs to be abused. That allegation, if taken seriously, would impugn a material percentage of American religious leaders over the course of our history. Such an allegation cannot possibly be a basis for discovery and trial in a Texas courtroom.

Nor does the petition's characterization of Gothard's promotion of sexual abuse as "active" or "deliberate" or "intentional" change the basic nature of the allegation—which is that the content of his religious teachings is dangerous to young women. Other than Gothard's

5

admittedly active and intentional propagation of controversial religious teachings, there are no facts alleged connecting Gothard or his organization to the crimes against these plaintiffs. The alleged connection is that Gothard preached a dangerous version of traditionalist Christianity to this family, which caused the assaults suffered by the plaintiffs to play out as they did. The constitutional problem with allowing any such allegation to proceed to further litigation should be obvious.[1]

I would grant the petition for writ of mandamus and require repleading of the petition to avoid the impermissible entanglement with religious questions that will inevitably attend further litigation conducted on the basis of this petition. I therefore respectfully dissent from the Court's denial of the petition, which should not be understood by the courts below as a license to ignore the severe constitutional implications of this lawsuit.

James D. Blacklock
Chief Justice

---

[1] An additional problem for the petition is that "[a]n actionable civil conspiracy requires specific intent to agree to accomplish an unlawful purpose or a lawful purpose by unlawful means." *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 881 (Tex. 2010). The plaintiffs' family was one of many thousands who participated in the IBLP ministry, and there is no allegation that Gothard or officials in his organization had any knowledge of or directed any particular attention to this family. Without additional allegations that Gothard or IBLP formed a "specific intent" to harm these plaintiffs, I doubt the petition states a cognizable conspiracy claim. Had the Court granted the petition, this question could have been explored as well.

**OPINION FILED:** June 27, 2025